GILES COUNTY BOARD OF EDUCATION and Aetna Life and Casualty Insurance Company, Appellants,

v.

W. T. HICKMAN, Appellee.

Supreme Court of Tennessee.

March 14, 1977.

W. A. Moody, Nashville, for appellants.

Robert W. Knolton, Columbia, for appellee.

OPINION

FONES, Justice.

There are two issues in this workmen's compensation case: (1) what constitutes adequate notice to employer of employee

injury; and (2) whether plaintiff's suit, filed more than one (1) year after date of injury, was properly sustained despite the statute of limitations.

The Chancellor held that plaintiff's conversations with the school principal and the office of superintendent of schools constituted actual notice to employer of his injury and further found defendants to be equitably estopped from raising the statute of limitations because of representations made to plaintiff. Plaintiff was awarded temporary total benefits from November 14, 1973, until November 13, 1975, ninety (90%) percent permanent partial disability to the body as a whole and all medical expenses.

On November 14, 1973, plaintiff hurt his back while loading frozen turkeys on a Giles County school bus. Although in pain, plaintiff continued driving the bus until November 27, 1973. On that date, the back pain was so severe that his driving ability was impaired. He called the principal of the school for which he drove and the Office of the Superintendent of schools, his supervisor, to arrange for a substitute driver. He reached the principal but was unable to speak with Mr. Goodman, the Superintendent. Instead he related the injury, its cause and his present pain to a Mrs. Henderson, the secretary to Mr. Goodman. Mrs. Henderson distinctly remembered the conversation and testified she relayed the total message to Mr. Goodman. Mr. Goodman denied that he was notified of the injury.

On November 29, 1973, plaintiff was admitted to a Lewisburg Hospital for examination and treatment of his back injury. He was released on December 3, but re-entered the hospital on December 29. Plaintiff was finally released from the hospital on January 8, 1974, but ordered confined to bed rest.

On January 30, 1974, plaintiff went to see Mr. Goodman to discuss his job status. During this conversation Mr. Goodman asked plaintiff if he had filed for compensation insurance. Plaintiff testified that this was the first time he was aware that he was covered by workmen's compensation. He was told to file his claim at the office of

Eslick and Strawn, agents for the defendant insurance carrier. Plaintiff went to the agents' office, located in Pulaski, that day and filled out forms reporting his work related injury. A few weeks later he received a telephone call at his home from a lady at the insurance company in Nashville. He was requested to give a statement over the telephone, to be recorded, about how the accident occurred and other matters relevant to the claims, and he did so.

Plaintiff testified that he telephoned Mr. Eslick several times and was told that the claim would be paid. "He told me that it would be paid. He said that it takes a while for it to mature and it takes a while to get everything worked up," but he said "you are definitely due something . ."

Exhibits from the file compiled in Aetna's Nashville office, reveal that the file was closed on June 21, 1974, because employee had failed to give notice of the accident within thirty (30) days.

No notice of the denial of the claim and closing of the file was conveyed to plaintiff, or Mr. Eslick.

On November 15, 1974, Mr. Eslick wrote to the supervisor of the claims department of Aetna in Nashville as follows:

"RE: Giles County Bd. of
Education, # 64C 18279
CCA Vs. W. T. HICKMAN

Dear Clyde:

Please check the status of this claim. The latest note in our file shows that at about 9:30 AM on 9/6/74 I talked with you and was promised that you would have someone contact Mr. Hickman concerning his claim.

On 8/7/74 Mrs. Caruthers had someone in your office call me and I discussed the claim with her and she said someone would write Mr. Hickman that his claim is not covered or would offer him a settlement.

Yesterday Mr. Hickman called us and stated that for several months he has not heard from anyone at the Aetna. If proper attention had been given this

claim it could have been settled for a small amount. If Mr. Hickman continues to be ignored we may end up with a mess on our hands. Please find someone to bring this case to a conclusion. Thanks."

It is not clear from Mr. Eslick's letter whether or not he was aware that his prodding of the Nashville office in August and September had resulted in their re-opening the file to the extent that on September 30, 1974, Ms. Clevenger of the Nashville Claims Department wrote to plaintiff that consideration of his claim required further medical information which they could obtain if he would sign the enclosed medical authorization forms. Plaintiff testified that he promptly signed the forms and returned them to the Nashville office.

On January 21, 1975, Ms. Clevenger wrote to Mr. Hickman advising that "we will be unable to cover your claim for workmen's compensation benefits."

As has been stated so many times by this Court, our review is confined to a determination of whether there is any material evidence to support the judgment of the trial court. Further, if the findings are supported by inferences which may fairly be drawn from the evidence, even though the evidence be susceptible of opposing inferences, the reviewing court will not disturb the award. *New Jersey Zinc Co. v. Cole,* 532 S.W.2d 246 (Tenn.1975); *Hartwell Motor Co., Inc. v. Hickerson,* 160 Tenn. 513, 26 S.W.2d 153 (1930).

Plaintiff having testified that he was frequently in touch with Mr. Eslick about his claim, we are entitled to infer from Mr. Eslick's letter to Aetna's Nashville office that on or shortly after August 7, 1974, Mr. Eslick advised plaintiff that he would soon hear from the Nashville office; that on or shortly after September 6, 1974, Mr. Eslick again related to him the substance of the promise made by the Superintendent of Claims in the Nashville office. The September 30 letter from that office to plaintiff requesting his signature on medical authorization forms gave plaintiff no cause for apprehension that his claim would be denied. To the contrary, it was supportive

of Mr. Eslick's statements to him. Aetna's September 30 letter, when considered in the light of its inter-company action in June and Mr. Eslick's August and September requests for action provides circumstantial evidence of a deliberate effort to defer denying liability until after the statute of limitations expired on November 14, 1974.

I.

The learned trial judge was correct in applying the doctrine of equitable estoppel in this case.

We think the factual situation in this case is analogous to that in *American Mutual Liability Insurance Co. v. Baxter,* 210 Tenn. 242, 357 S.W.2d 825 (1962). While the plaintiff's evidence in *Baxter* is somewhat more explicit in that he testified defendant's claims manager told him approximately one (1) week before the statute ran that the company would start paying him and that he need not worry about the statute of limitations, we find as did the court below that Plaintiff Hickman was led to believe that his claim would be honored until January 21, 1975.

We quote the substance of equitable estoppel as applied in workmen's compensation cases from *Baxter:*

"The doctrine of equitable estoppel is one of frequent application; and, in a proper case, may be invoked to estop a debtor to plead the statute of limitations. In *Saylor v. Trotter,* 148 Tenn. 359, 367, 368, 255 S.W. 590, 593, Chief Justice Green, speaking for the Court, referring to this doctrine, said:

'It is constantly growing, and is applied to new conditions as they arise. It is founded on good morals. It rests upon the necessity of requiring men to deal honestly and fairly with their fellow men.

' "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly

forbidden. It involves fraud and false-hood, and the law abhors both." *Dickerson v. Colgrove,* 100 U.S. 578, 25 L.Ed. 618.

' "What I induce my neighbor to regard as true is the truth as between us, if he has been misled by my asseveration." *Kirk v. Hamilton,* 102 U.S. 68, 26 L.Ed. 79.' " 357 S.W.2d at 827.

## II.

The Chancellor also properly decided that employer had actual knowledge of plaintiff's injury and consequently no written notice was required. T.C.A. § 50–1001. Plaintiff notified the principal for whom he drove as well as the office of the school superintendent. The testimony of Mrs. Henderson concerning her conversation with the superintendent is material evidence that the employer had actual knowledge of plaintiff's back injury on November 27, 1973.

Affirmed. Costs are adjudged against defendants.

COOPER, C. J., and BROCK and HARBISON, JJ., concur.

HENRY, J., not participating.